Commonwealth *v.* Hicks, Appellant.

Argued March 20, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*N. Nathan,* with him *Benjamin R. Donolow,* for appellant.

*Samuel Dash,* Assistant District Attorney, with him *Michael von Moschzisker,* First Assistant District Attorney, and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY HIRT, J., July 14, 1953:

Thomas Hicks was charged on Bill 353 with assault and battery, aggravated assault and battery, assault and battery with intent to ravish, and with rape. In other indictments William F. Murray and Daniel Smart

were charged with the same offenses. On Bill 355 all three were jointly charged with taking a female child under the age of sixteen years for the purpose of sexual intercourse and inveigling and enticing the child for that purpose. All of the charges were based on the acts of the defendants in relation to Clare Dorothy Feely, the 15-year old girl involved, on a single occasion, during the night of October 1, 1950.

When the cases were called for trial on November 10, 1952, counsel representing Thomas Hicks moved for a continuance on the ground that William F. Murray, charged with the same offenses, was an "important defense witness" and was then in the armed service in Korea. The trial judge reminded counsel that the cases had been twice continued because of counsel's absence when called for trial on two previous occasions. And in denying the motion for further continuance the judge referring to Murray said: "He may never come back. He may not come back for years. We cannot have our list held up because one of the defendants doesn't want to be tried until another defendant comes back from Korea". Hicks in the absence of Murray was tried with Donald Smart and was found guilty on all of the charges. He was sentenced on his conviction of the charges of Bill 355. In this appeal, from that judgment in seeking a new trial, he charges the trial judge with reversible error in refusing to grant his motion for a further continuance of the trial, although the record does not indicate that he excepted to the ruling.

An application for a continuance is addressed to the sound discretion of the trial judge and in the absence of an abuse of discretion the action thereon will not be disturbed. *Commonwealth v. Speroff,* 169 Pa. Superior Ct. 197, 82 A. 2d 569. And in determining whether a continuance should have been granted the

nature of the crime and the circumstances attending it are to be considered. *Commonwealth v. Grosso,* 169 Pa. Superior Ct. 606, 84 A. 2d 239.

In the application for a continuance in this case the court was not informed by Hick's counsel as to what was expected to be proved by Murray. Moreover there was no assurance that Murray would be available as a witness at any time to which the trial might be deferred, or in fact that he would testify if called. Cf. *Commonwealth v. Winnemore,* 1 Brewster 356. The court was not obliged to take judicial notice, as is now contended, of the "Army's defined policy for rotation of soldiers from Korea" and the record does not indicate that any representation, definite or otherwise, was made to the court as to when Murray would return. Moreover it is obvious that even when available as a witness, Murray well might refuse to testify on a claim of privilege.

The facts developed at the trial confirm the judgment of the trial judge in refusing a continuance. Clare Feely with Phyllis Craig, another young girl, in the evening of October 1, 1950, were accosted by the three defendants in an automobile and were induced to take a ride with them. After midnight the car was stopped in a secluded spot. Smart then went for a walk with Phyllis. It is a fair inference, in the light of his conviction of the charges against him, that he knew of the intentions of Murray and Hicks and that he designedly removed Phyllis as a witness to the consummation of them. Smart did not harm Phyllis but in the interval before he returned to the car both Murray and appellant, according to proofs accepted by the jury, had intercourse with Clare in that order. When the girls arrived at Phyllis's home about two o'clock in the morning Clare's disheveled condition indicated that she had been maltreated, and she was

hysterical. Her father was summoned and after reporting the occurrence to the police, Clare was taken to a hospital. The doctor's testimony from an examination of her was that she had been violated. There is also testimony of a detective on the police force that Murray and Hicks when taken into custody admitted intercourse with Clare Feely on that occasion. The testimony of the guilt of Murray as well as of Hicks is impressive. And the attempt of this appellant at the trial to charge Murray alone with the proven rape of the girl seriously challenges the good faith of the application for a continuance. Certainly there was no abuse of discretion in its refusal.

Appellant, as a second ground for a new trial, contends that he was prejudiced by the court's interruption of his counsel in the closing argument to the jury. When counsel insisted in his summation that no violence had been employed, the trial judge interrupted him by saying: "Well, he pushed her didn't he?" Clare Feely had testified unequivocally to two acts of violence. When she was asked, referring to both Murray and Hicks: "Had you disrobed? Did they disrobe you?" she answered: "No, they pushed my skirt and they pulled my pants off of me"; and this excerpt follows in the record of Clare's testimony: "Q. What did he [Murray] do after he had intercourse with you? A. Then he got out of the car and I wanted to get out of the car and Hicks came in and pushed me down and then he had an intercourse; that's all I remember". The remark of the trial judge in the form of a question was more than rhetorical and it called for an answer by appellant's counsel. Instead, he refused comment and although invited by the trial judge to continue, he abruptly stopped his argument to the jury at that point. A trial judge may, and it also is his duty, promptly to correct a flagrant misstatement by

counsel so that the argument may be confined within the limits of legitimate advocacy. *Com. v. Wood et al.,* 118 Pa. Superior Ct. 269, 179 A. 756. Even improper remarks by a trial judge do not constitute reversible error unless they harm the defendant's cause. *Commonwealth v. Sykes,* 353 Pa. 392, 45 A. 2d 43. Moreover the remark of the trial judge, if regarded as an expression of his opinion on a vital fact, was not error for it cannot be construed as a binding instruction invading the province of the jury. It is not error for a judge to express his opinion on the facts if done fairly. *Commonwealth v. Orr,* 138 Pa. 276, 20 A. 866. In any view the interruption of counsel was justified in the present case.

Judgment affirmed and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time supersedeas was granted.

Although the defendant was found guilty on the charges of Bill 353 he has no standing to appeal since sentence was suspended and no final judgment was entered against him. *Commonwealth v. Graham,* 170 Pa. Superior Ct. 343, 85 A. 2d 632.

Accordingly the appeal to No. 41 October Term, 1953 is dismissed.